346 P.2d 310

CITY OF CARLSBAD, New Mexico, a municipal corporation, Plaintiff-Appellant,

v.

T. R. CAVINESS, dba Arkie's Liquor Store, and Vera Carey, Executrix of the Last Will and Testament of Roy Carey, deceased, Vera Carey and Roy Carey, Jr., Defendants-Appellees.

No. 6576.

Supreme Court of New Mexico.

Nov. 13, 1959.

---

James L. Dow, Carlsbad, for appellant.

Reese, McCormick, Lusk & Paine, Carlsbad, for appellees.

COMPTON, Justice.

This is an appeal from a judgment denying appellant injunctive relief. Appellee Caviness, defendant below, operated a retail liquor establishment within the City of Carlsbad under authority of a valid dispenser's license issued by the Division of Liquor Control of the New Mexico Bureau of Revenue. He applied to the Division for a transfer of location of the license to a point located four-tenths of a mile northwest of the city limits of Carlsbad and, over protest entered by the city, was granted the transfer by the Chief of Division. Thereupon the city sought an injunction to restrain Caviness from using the new location outside the city limits for the purpose of selling alcoholic beverages in violation of its zoning ordinance. The owner of the land at the new site, Roy Carey, since deceased, was joined by the city as a party defendant.

The city alleged that the transfer of location was controlled by a comprehensive city zoning ordinance prohibiting the sale of liquor anywhere within the "jurisdictional area" of the city except for a specified six-block area located within the city limits. Under the city's planning and platting jurisdiction authorized by §§ 14–2–1 through 14–2–34, N.M.S.A.1953, the city argued that its zoning jurisdiction included an area extending three miles from its corporate limits. The city further argued that the Chief of Division had statutory discretionary authority to approve the transfer, but that the transfer could not be made to a prohibited location. The city's contention was that its "extraterritorial zoning authority" gave it concurrent jurisdiction with the Chief of Division over the new location.

Following the hearing on an order to show cause, the trial court held that the city has no legal basis upon which it could prevent the transfer of location beyond the city limits after it had been authorized by the Chief of Division and denied the requested injunctive relief.

The city assigns several points of error but we feel that the determinative ques-

tion to be decided here is whether the legislature has granted authority to the city to zone an area outside of its corporate limits to prohibit the use of property lying in this area for the purpose of selling alcoholic beverages. For the purposes of this case, we shall assume that the city has duly created a planning commission and that the city's ordinance, § 3.4 of the 1958 Carlsbad City Code, was duly enacted according to law and is a valid zoning ordinance effective within the "jurisdictional area" of the city. The question is whether the legislature intended to include "zoning" powers within the "planning and platting" jurisdiction given municipalities by §§ 14–2–1 through 14–2–34, N.M.S.A.1953. If so, § 14–2–23 would extend the operation of the city's zoning ordinance to include the area lying within three miles of its corporate limits. In order to ascertain such legislative intent, we must determine the meaning of these terms as used by the legislature and will briefly review the planning and platting statutes.

Section 14–2–18 provides for adoption of a city master plan for the physical development of the municipality and states that the master plan:

"* * * may include among other things, the general location, character, and extent of streets, bridges, viaducts, parks, parkways, waterways and waterfront developments, playgrounds, airports, and other ways, grounds, places and spaces, * * * public schools, of public buildings and other public property; * * * public utilities and terminals * * *; the acceptance, widening, removal, extension, relocation, narrowing, vacation, abandonment, or change of use of any of the foregoing * * *; the general location, character, layout, and extent of community centers and neighborhood units; and the general character, extent, and layout of the replanning of blighted districts and slum areas. * * *"

Section 14–2–22 states that after adoption of the master plan:

"* * * no *street, park, or other public way, ground, place, or space, no public building or structure, no public utility,* * * * if covered by the master plan or any adopted part thereof shall be constructed or authorized in the municipality or within its planning jurisdiction until and unless the location and extent thereof shall have been submitted to and approved by the planning commission. * * *" (Emphasis ours.)

It is to be noted that the foregoing sections refer only to streets, parks or other public ways and to public buildings and utilities.

These same sections of the statutes which grant planning jurisdiction also include provisions for "platting" authority, a "plat" being a "map or representation on paper of a piece of land subdivided into lots, with streets, alleys, etc., usually drawn to scale." Black, Law Dictionary (4th Ed. 1951) p. 1309. Section 14–2–23 prescribes the limits of extraterritorial planning and platting jurisdiction and further provides that:

"* * * no map, plan, plat, or re-plat of any such territory shall be filed or recorded until it shall have been submitted to and approved by the said planning commission. * * *"

Section 14–2–24 requires subdividers to prepare and file plats of subdivisions and § 14–2–25 allows the city to adopt subdivision regulations which:

"* * * may provide for the harmonious development of the municipality and its environs; for the co-ordination of streets within subdivision with other existing or planned streets or with other features of the master plan or official map of the municipality; for adequate open spaces for traffic, recreation, drainage, light and aid; and for a distribution of population and traffic which will tend to create conditions favorable to health, safety, convenience, or prosperity, general welfare and such regulations may govern the width of streets, the width, depth and arrangement of lots *and other matters including land use*, to carry out the purposes of this act.

* * * * * *

"The planning commission or council, as the case may be, shall have the power to agree with the applicant upon use, height, area or bulk requirement or restrictions governing buildings and premises within the subdivision, *provided such requirements or restrictions do not authorize the violation of the then effective zoning ordinance of such municipality*." (Emphasis ours.)

Taken from context, the authority given to regulate "other matters including land use" might appear to be a grant of zoning powers but the legislature entitled this section "Subdivision Regulations" and the question of subdivision is not involved in this case. A reading of the section shows an obvious intent that such regulations be enforced only through the filing of plats of new subdivisions. The section also refers to zoning ordinances as a separate matter.

The planning and platting statutes continue with various procedural and penalty provisions relating to planning and platting.

Do these planning and platting statutes confer zoning powers on municipalities? We think not. The Supreme Court of

Connecticut held in Kiska v. Skrensky, 145 Conn. 28, 138 A.2d 523, 524:

> "While there is a definite and harmonious relationship between 'planning' and 'zoning', there is a distinction between them, 'zoning' being primarily concerned with use of property."

The Supreme Court of Kentucky distinguished these terms in Seligman v. Belknap, 288 Ky. 133, 155 S.W.2d 735, 736:

> "Broadly speaking, 'planning' connotes the systematic development of an area with particular reference to location, character and extent of streets, squares, and parks and to kindred mapping and charting, and 'zoning' relates to regulation of the use of property, to structural and architectural designs of buildings; and the character of use to which the property or the buildings within classified or designated districts may be put."

And in State ex rel. Kearns v. Ohio Power Co., 163 Ohio St. 451, 127 N.E.2d 394, 399, the court explained:

> "'Zoning' and 'planning,' are not synonymous; zoning is concerned chiefly with use and regulation of buildings and structures, whereas planning is of broader scope and significance and embraces the systematic and orderly development of a community with particular regard for streets, parks, industrial and commercial undertakings, civic beauty and other kindred matters properly included within police power."

While "planning" and "zoning" are sometimes used as synonyms and both include some common objectives, the authorities are in agreement that the terms are separate and distinct. A terse summary can be found in 8 McQuillan, Municipal Corporations (3d Ed. 1957) at page 12:

> "Zoning obviously is a phase of city planning. * * * However, zoning is exclusively concerned with use regulation whereas planning is broader and connotes a systematic development of a municipality contrived to promote the common interest not only with respect to uses of lands and buildings but with respect to streets and parks, residential developments, industrial and commercial enterprises, civic beauty, public convenience and all matters embraced within the police power. * * *"

At page 33, this same author explains one relationship between the two concepts:

> "It may be provided by a zoning ordinance that zoning harmonize with any scheme for municipal improvement put forth by a municipal planning board or the like."

New Mexico's planning and platting statutes, briefly reviewed above, fit into these established definitions of "planning" and provide for enforcement through laws governing the filing of plats of new subdivisions.

Our conclusion is further enhanced by a look at another article of the statutes. In 1927, the New Mexico Legislature provided for municipal zoning by enactment of specific zoning legislation, now compiled as §§ 14–28–9 through 14–28–18, N.M.S.A. 1953. These zoning statutes not only fail to provide extraterritorial zoning powers for municipalities but the amendments added by the 1959 Legislature make clear the intent to withhold such extraterritorial powers from municipalities by providing that certain counties, and potentially all counties, may zone areas outside of municipalities, including the area lying within a distance of three to five miles from the corporate limits of the municipalities. Laws 1959, Chapter 271.

Inasmuch as the appellant city has no zoning authority beyond its corporate limits, it was not error to deny injunctive relief. The conclusion reached renders unnecessary a review of other points raised in this appeal.

The judgment is affirmed and it is so ordered.

LUJAN, C. J., and McGHEE, CARMODY, and MOISE, JJ., concur.