540 P.2d 233 (1975)
88 N.M. 303
George E. BURROUGHS, Petitioner-Appellant,
Ovedio Saiz, Intervenor-Appellant,
v.
BOARD OF COUNTY COMMISSIONERS of the COUNTY OF BERNALILLO, Respondent-Appellee,
Empire Realty & Trust, Inc., Intervenor-Appellee.
No. 10090.
Supreme Court of New Mexico.
September 8, 1975.
*234 George E. Burroughs, pro se, Betty A. Camunez, J. Brent Ricks, Charles T. DuMars, Albuquerque, for appellants.
Bruce C. Redd, McAtee & Zucht, Albuquerque, for appellees.

OPINION
McMANUS, Chief Justice.
This cause began in 1971 when Empire Realty and Trust, Inc., intervenor-appellee, filed application No. CZ 71-28 with the Bernalillo County Zoning Administrator to change the zone classification of a 9.4-acre tract of land from A-2 residential to C-1 commercial. The request was for the purpose of operating an overnight campground. After four public hearings, the application was eventually denied on November 8, 1972. This decision was based in part upon the following statement made by the Bernalillo County Planning Department: "Due to topographic conditions of excessive slope and varied relief, penetration into forested areas and juxtaposition with a residential subdivision, commercial zoning for the subject property would not be appropriate, nor would it be in the best interest of the public at large." Bernalillo County Board of County Commissioners, Minutes, November 8, 1972.
Empire Realty then asked that an exception be made in their case by requesting a special use permit. The application was labeled CSU 73-24, and its purpose was to obtain permission to build an overnight campground on the same 9.4 acres referred to herein. At a public hearing on July 17, 1973, respondent-appellee, Board of County Commissioners of the County of Bernalillo (hereinafter the Commissioners), approved CSU 73-24.
The petitioner-appellant, George E. Burroughs, petitioned the district court, pursuant to § 14-20-7, N.M.S.A. 1953 (Repl.Vol. 3, 1968), for review of the Commissioners' decision. Empire Realty was allowed to intervene as a party respondent. Ovedio Saiz, intervenor-appellant, was granted leave to intervene as a party petitioner. The court entered judgment for the respondent, thereby approving the special use permit.
The county's authority to promulgate zoning ordinances must come from enabling legislation from the state legislature. Cf. City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13 (1964); City of Carlsbad v. Caviness, 66 N.M. 230, 346 P.2d 310 (1959). Therefore, any exercise of power under a zoning ordinance must be authorized by statute. The pertinent statutes are §§ 14-20-1 et seq., N.M.S.A. 1953 (Repl.Vol. 3, 1968).
Section 14-20-1, supra, provides:
"A. For the purpose of promoting health, safety, morals, or the general welfare, a county or municipality is a zoning authority and may regulate and restrict within its jurisdiction the:
(1) height, number of stories and size of buildings and other structures;
(2) percentage of a lot that may be occupied;
(3) size of yards, courts and other open space;
(4) density of population; and
(5) location and use of buildings, structures and land for trade, industry, residence or other purposes.
"B. The county of municipal zoning authority may:
(1) divide the territory under its jurisdiction into districts of such number, shape, area and form as is necessary to carry out the purposes of sections 14-20-1 through 14-20-12 New Mexico Statutes Annotated, 1953 Compilation; and
(2) regulate or restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land in each district. All such regulations shall be uniform for each class or kinds of buildings within each district but regulation in one district may differ from regulation in another district."
*235 As a result of this statute, the Commissioners adopted a "Comprehensive Zoning Ordinance of Bernalillo County" (hereinafter the Ordinance). This took effect on April 17, 1973. In the Ordinance, pursuant to § 6 thereof, the county was divided into nine [9] zones. The land which is the subject of this suit is zoned A-2 rural agricultural which is provided for in § 9 of the Ordinance.
Section 14-20-6(C), N.M.S.A. 1953 (Repl.Vol. 3, 1968), makes allowance for special exceptions to zoning ordinances in the following language:
"When an appeal alleges that there is error in any order, requirement, decision or determination by an administrative official, commission or committee in the enforcement of sections 14-20-1 through 14-20-12 New Mexico Statutes Annotated, 1953 Compilation, or any ordinance, resolution, rule or regulation adopted pursuant to these sections, the zoning authority by a two-thirds [2/3] vote of all its members may:
(1) authorize, in appropriate cases and subject to appropriate conditions and safeguards special exceptions to the terms of the zoning ordinance or resolution: * * *."
Pursuant to this statute, § 16 of the Ordinance authorizes the Commissioners to issue special use permits in certain specified situations:
"A. By special Use Permit after receipt of a recommendation from the Bernalillo County Planning Commission, the Board of County Commissioners may authorize the location of uses in any zone in which they are not permitted by other sections of this ordinance; the Board of County Commissioners may likewise authorize the increase in height of buildings beyond the limits set by previous sections of this ordinance. With such permits, the Board of County Commissioners may impose such conditions and limitations as it deems necessary.
* * * * * *
"B. Such Special Use permits may authorize only the following uses: * * *
"(13) Planned development area.
* * * * * *
"(18) Trailer court, provided it complies with the following requirements: * * *"
(Emphasis added.)
The question thus raised and to be decided here is whether "Special Use Permits," authorized by § 16 of the Ordinance is equivalent to and authorized by the "Special Exceptions" provision of § 14-20-6(C), supra. Appellant Burroughs contends that the two terms ("special use" and "special exceptions") are synonymous and that the conditions of § 14-20-6(C), supra, must be met by the party seeking a special use permit under § 16(A) of the Ordinance. On the other hand, the appellees contend that the two terms have different meanings. It is our opinion that the two phrases mean one and the same thing. As stated in 3 R. Anderson, American Law of Zoning, § 15.01 (1968):
"The `special exception,' the `special permit,' and the use permitted subject to administrative approval are qualitatively the same. Each involves the use which is permitted rather than proscribed by the zoning regulations."
There were references in the briefs to "variances`" but the New Mexico Zoning Regulations refer only to "special exceptions." These terms must be distinguished.
101 C.J.S. Zoning § 273, at 1038-39 (1958), states:
"Thus, exceptions may be treated as a legislative process or the exercise of a legislative function, the conditions for which must be found in the zoning ordinance and may not be varied, while variances may be treated as an exercise of the judicial function, whereby literal enforcement of ordinances may be disregarded. So, also, a variance is authority extended to the owner to use his property in a manner forbidden by the zoning enactment, while an exception allows *236 him to put his property to a use which the enactment expressly permits. Interests served. Exceptions are allowable to serve the general good and welfare rather than individual interests merely, while a variance is a relaxation of an ordinance to alleviate conditions peculiar to particular property."
The Commissioners and the court below both approved the "special use permit" for the overnight campground on the basis that either the "planned development area" or "trailer court" categories of § 16 of the Ordinance would include by implication the use of the land in question as an overnight campground. By attempting to find an exception within the Ordinance itself, the Commissioners made it clear that they were dealing with this problem as a request for an exception rather than a variance. The consideration of this request for an exception was, therefore, a legislative process involving a determination of whether or not an overnight campground was a use permitted under the terms of the Ordinance, and for the general good and welfare of the community.
The problem before us now is to construe the terms "planned development area" and "trailer court." If we determine that either or both of these terms includes the use of an area as an overnight campground, then we must hold that the Commissioners had the authority under the Ordinance to issue a special use permit therefor. If we determine that an overnight campground is a use not covered by either of these specific categories, then we must hold that the Commissioners had no authority under the Ordinance to grant such a special use permit.
In construing municipal ordinances or county zoning ordinances, such as the one here before us, the same rules of construction are used as when construing statutes of the legislature. Continental Oil Co. v. Santa Fe, 25 N.M. 94, 177 P. 742, 3 A.L.R. 398 (1918). One of these rules of construction is to interpret the statute or ordinance to mean what the legislature intended it to mean, and to accomplish the ends sought to be accomplished by it. State ex rel. Sanchez v. Reese, 79 N.M. 624, 447 P.2d 504 (1968).
Another rule of construction is that the entire act or ordinance is to be read as a whole and each part construed in connection with every other part so as to produce a harmonious whole. Trujillo v. Romero, 82 N.M. 301, 481 P.2d 89 (1971). Still another is that the court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written. State ex rel. Barela v. New Mexico State Bd. of Ed., 80 N.M. 220, 453 P.2d 583 (1969). With these various rules of construction in mind, we approach the problem before us.
If the term "planned development area" were to be construed to include an overnight campground, then that category would include nearly any use. In a previous case this court was asked to consider whether a "planned development area" includes a truck terminal. See Cinelli v. Whitfield Transportation, Inc., 83 N.M. 205, 490 P.2d 463 (1971). Unfortunately, the court did not answer that question because the case turned on another issue. However, that case, together with the one before us now, indicates that "planned development area" is a somewhat vague term which is invoked when a particular use does not fit neatly into any of the other special use categories. Reading the Ordinance as a whole, it seems apparent to us that the term "planned development area" was not intended as an all-inclusive catchall category, and would not in the ordinary understanding of the words include an overnight campground. Such an interpretation would require reading language into the Ordinance which is not there.
Therefore, if the Commissioners had any authority under § 16B of the Ordinance to issue a special use permit for the construction and maintenance of an overnight campground, they must have done so on the reasoning that the category *237 of "trailer courts" includes such a use. We also have trouble with this approach.
The Ordinance, § 5, defines "trailer court" as "any lot on which two or more trailers are used for human habitation." That same section defined "trailer" as follows:
"A vehicle without motive power, designed to be drawn by a motor vehicle and to be used for carrying of persons or property, or as a temporary or permanent human habitation, including trailer coach, trailer home, mobile home, cargo trailer, semi-trailer, and house trailer, whether the same be with or without wheels, and whether or not attached to or incorporated in a building, and that part of any self-propelled vehicle which is designed to be used as a temporary or permanent human habitation, whether or not the same be attached to or incorporated in a self-propelled vehicle, or removed therefrom, whether the same be with or without wheels, and whether or not attached to or incorporated in a building * * *."
Generally, the people living in trailer courts are residing and working in the community, whether they happen to live in a luxurious double-wide mobile home or a small trailer. They vote and pay taxes in the community, including property taxes on their mobile homes (in addition to vehicle registration fees). § 64-11-14 N.M.S.A. 1953 (2d Repl.Vol. 9, pt. 2, 1973 Supp.). They are entitled to participate in the political affairs of the community, and their children attend schools there as well. See generally Annot., 42 A.L.R.3d 598 (1972); B. Hodes and G. Roberson, The Law of Mobile Homes, chs. 1 and 7 (2d ed. 1965); 54 Am.Jur.2d Mobile Homes, Trailer Parks, and Tourist Camps, §§ 1, 5, 13, 14 and 15 (1971).
On the other hand, the people staying in overnight campgrounds are generally transients, whose only contact with New Mexico is that they are stopping over for a night on vacation. Of course, some people may stay in overnight campgrounds for longer periods of time, and some may stay in trailer courts for only a few days, but this is the exception rather than the rule.
There is a clear distinction between a "trailer court" and an overnight campground, and nowhere in the Ordinance can we discern an intention to include overnight campgrounds in the category of "trailer court."
The property on which the proposed overnight campground is to be located is presently classified A-2 rural agricultural. According to the Ordinance, "the purposes of this zone are to preserve the scenic and recreational values in the National Forests and similar adjoining land, to safeguard the future water supply, to provide open and spacious development in areas remote from available public services and to recognize the desirability of carrying on compatible agricultural operations and spacious home developments in areas near the fringes of urban development."
In our opinion, a congested overnight campground with campers, recreational vehicles and travel trailers coming and going daily is totally incompatible with the express purposes of this zone. Of course, a comprehensive zoning ordinance can empower the zoning agency to authorize such uses through the issuance of a special use permit, but the category would have to be much more explicit in permitting such a use than the Ordinance here is.
The New Mexico Zoning Regulations specifically state that, "the regulations and restrictions of the county or municipal zoning authority are to be in accordance with a comprehensive plan. * * *" § 14-20-3, N.M.S.A. 1953 (Repl.Vol. 3). The Ordinance is just such a comprehensive plan, and § 16 which establishes certain limited special exceptions, is an integral part of this plan. "[T]he main objectives of requiring that a special permit be obtained before a use of land is commenced are to protect adjoining property, and to insure the orderly and efficient development of the community." 3 R. Anderson, American Law of Zoning, § 15.12 (1968).
*238 It is our opinion that the granting of a special use permit to Empire Realty by the Commissioners, authorizing the construction and maintenance of an overnight campground in an A-2 rural agricultural zone was an improper exercise of power, since such a use is not permitted under § 16 of the Ordinance. The Commissioners had no authority under the specific provisions of the Ordinance to issue this special use permit.
The cause must, therefore, be reversed.
It is so ordered.
STEPHENSON and MONTOYA, JJ., concur.