# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-002

Filing Date: May 24, 2021

No. A-1-CA-37995

ELI SANCHEZ, PATRICIA C. TRUJILLO,
ARROYO HONDO COMMUNITY
ASSOCIATION, and ACEQUIA MADRE
DEL LLANO,

      Petitioners-Appellants,

v.

BOARD OF COUNTY COMMISSIONERS
OF TAOS COUNTY,

      Respondent-Appellee,

and

EDMUND HEALY,

      Intervenor/Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sarah C. Backus, District Judge**

Certiorari Denied, October 1, 2021, No. S-1-SC-38868. Released for Publication
February 22, 2022.

Atler Law Firm, P.C.
Timothy J. Atler
Jazmine J. Ruiz
Albuquerque, NM

Graeser & McQueen, Attorneys at Law
Christopher L. Graeser
Santa Fe, NM

for Appellants

Robles, Rael & Anaya, P.C.
Randy M. Autio
Charles Rennick

Albuquerque, NM

for Appellee Board of County Commissioners of Taos County

Sommer, Udall, Hardwick & Jones, PA
Jack N. Hardwick
Santa Fe, NM

for Appellee Edmund Healy

Enrique Romero
Santa Fe, NM

for Amicus Curiae New Mexico Acequia Association, Inc.

**OPINION**

**HENDERSON, Judge.**

**{1}** Eli Sanchez (Sanchez), Patricia C. Trujillo (Trujillo), Arroyo Hondo Community Association, and Acequia Madre del Llano (collectively, Petitioners[1]) petitioned for a writ of certiorari to review the district court's decision affirming permits granted by the Board of County Commissioners of Taos County (the County). The County affirmed the decision of the Taos Planning Commission (Planning Commission) to grant a permit to construct a heliport on property owned by Intervenor Edmund Healy (Healy), adjoining agricultural fields farmed by Sanchez and Trujillo. Petitioners claim that a series of unpermitted and permitted construction ranging over a five-year period and culminating in the permit allowing construction of the heliport interfered with their access to and use of a lateral that runs across the Healy property to their fields.

**{2}** The County refused to apply the provisions of the Taos, N.M., Ordinance 2015-02, Land Use Regulations (LUR) (2015), requiring the permission of the acequia commission for any construction activity which disturbs an acequia "in any way[,]" claiming that this regulation applies only to construction that disturbs an acequia madre, and not a lateral. *See* Taos, N.M., LUR art 4, § 4.8.1(N).

**{3}** In addition, the County refused to consider Petitioners' challenge to the installation of a culvert in 2012 and the building of a retaining wall in 2015, preliminary steps in the heliport construction that disturbed the lateral. Petitioners argued that their appeal is timely based on the unusual circumstances of piecemeal construction and the County's failure to provide notice and request approval of the acequia commission. The County found, and the district court agreed, that the appeal of any permit prior to the final permit for the heliport was untimely.

---

1The Acequia Madre del Llano was not a named petitioner in this case until the Notice of Appeal was filed before the district court on August 9, 2017.

**{4}** In this appeal, we address (1) whether a lateral is also considered an acequia under the Taos, N.M., LUR art. 4, § 4.5.3(C); and (2) whether there were unusual circumstances which excused the untimely appeal by Petitioners. Having read the briefs, heard oral argument, and being fully informed on the issues and applicable law as raised by the parties, we reverse the district court and hold that laterals are acequias; and remand a portion of this case to the County to hold a new hearing regarding all the permits issued during the course of this construction, consistent with this opinion.

## BACKGROUND

**{5}** We first lay out the geographical description at the center of this litigation and set forth the general factual and procedural background preceding this appeal, reserving further discussion of facts or litigative events where pertinent to our analysis.

**{6}** This case involves three named acequias and a lateral[2] in the small northern New Mexico town of Hondo Seco. The acequias and laterals include (1) the Acequia Madre del Llano (Acequia Madre); (2) the Acequia de la Cordillera; (3) the Acequia de la Plaza; and (4) a lateral—which is at the center of this appeal. The tracts of property involved are that of Healy, and three adjacent properties of parcientes[3] Sanchez, Padilla, and Trujillo (Padilla is not a party to this case), to the west of Healy's tract. The unnamed lateral runs between the boundary of the Healy tract and the three parcientes' tracts, delivering water to the fields of the three parcientes. The Acequia Madre is not located on the property of the parties, but it is the main acequia, or irrigation ditch, which feeds water into the other acequias and laterals, including the lateral at issue in this case.

**{7}** As noted above, this case involves a series of permitted and unpermitted construction projects that took place from approximately 2011 through 2016, which Petitioners allege disturbed the lateral acequia that carries water to the Sanchez and Trujillo fields. Healy, as a developer, sought a series of permits from the Taos County Planning Director (Planning Director) to construct a bridge, a retaining wall, a parking lot, and ultimately a heliport, on his property. His construction began in 2011 or early 2012 with construction to encase the impacted lateral in a culvert.[4] This construction was done without a permit. The facts below are organized in chronological order, beginning with the construction of the culvert, followed by each of Healy's applications for a permit. The procedural history follows.

---

2We use the term "lateral" to refer to smaller ditches that serve one or more owners. These smaller ditches are commonly located between property owners. The term "lateral" is used interchangeably with the terms "acequia, lindero" and "acequia, venita" as defined in the LUR. *See* Taos, N.M., LUR art. 2, § 2.1.2 (Definitions).

3Acequia, Parciente (also spelled Parciante) refers to "[a] member or shareholder of an [a]cequia, responsible for a share of ditch maintenance proportionate to his or her irrigated acreage." *Id.* Sanchez, Padilla, and Trujillo are in fact parcientes of the Acequia Madre.

4A culvert is defined as, "a transverse drain or waterway (as under a road, railroad, or canal)[.]" *Tompkins v. Carlsbad Irrigation Dist.*, 1981-NMCA-072, ¶ 23, 96 N.M. 368, 630 P.2d 767 (internal quotation marks and citation omitted).

## I.  Factual Background

### A.  The Unpermitted Construction Placing the Lateral Into Culverts

{8}     Petitioners assert that around 2012, without applying for, or receiving a county permit, Healy proceeded to construct a culvert encasing the lateral across his property. This lateral was one that was shared by the parcientes. In contrast, the County maintains that the culverts had already been installed in 2011, prior to any of these proceedings or applications for permits. Healy admits that at some point in 2012, he placed the laterals in steel culverts and built a junction box and installed gates so that all three parcientes could distribute water among their properties. Healy notes that he received permission to place the lateral into culverts from the brother of one of the Petitioners.

### B.  The 2012 Permit

{9}     In 2012, Healy submitted an application to the Taos County Planning Department (Planning Department) seeking a Special Use Permit (SUP-002-2012 permit), to construct a driveway and bridge crossing to his property.[5] Though the permit application was for a driveway and bridge, a terraced retaining wall was also shown in the plans.[6] Petitioners contend that, despite the retaining wall being shown in the plans, it was not officially a part of the proposal. The plans did not show acequias or laterals that flowed across the property. Petitioners assert that while they received notice for the SUP-002-2012 permit, the notice focused exclusively on the construction of the road and bridge. Petitioners state that the notice did not fairly apprise them that Healy also sought to build a retaining wall that would interfere with their lateral. The Planning Commission approved the permit application.

### C.  The 2015 Permit

{10}    In 2015, Healy submitted an application for a building permit (CO-203-15), to construct a retaining wall. According to the Planning Director, this application—or the "building permit"—was not required to undergo the same process of review as a special use permit or administrative permit. The Planning Director maintained that the construction of the retaining wall was exempt from such review under Taos, N.M., LUR art. 3, § 3.3.1 (Exemptions from Land Use Permit Requirements).

{11}    A memorandum from the Planning Director to the Planning Commission acknowledged that the layout of the proposed retaining wall differed from the retaining

---

5A Special Use Permit is distinct from other types of permits issued by the Planning Department. The other includes, as relevant here, an Administrative Permit. Each type has its own permit requirements. *See* Taos, N.M., LUR art. 4, § 4.1.1 (Permit Requirements). Both types of permits require the same type of notification and approvals, namely from "other entities such as pueblos, . . . neighborhood associations and acequia associations, as applicable." *Id.* § 4.5.2(E).

6Petitioners state that "[a] copy of the notice for the [SUP-002-]2012 [p]ermit is not in the record due to the County's refusal to allow "any testimony or exhibits pertaining to permits or construction phases prior to [the 2016 Permit], particularly the retaining walls."

wall included in the SUP-002-2012 permit plans. The location of the proposed retaining wall was changed to cross over the lateral, making access to the lateral difficult or impossible and blocking the traditional access to the headgate used by parcientes. The memorandum emphasized that the Planning Director reviewed the change and "determined that the reconfiguration did not create a health, safety, or welfare issue." No mention is made of the effect of the construction on the lateral. No request for approval was made to the acequia commission. The Planning Director recommended that the Planning Commission grant the building permit (CO-203-15) to Healy to construct the retaining wall. The building permit was approved by the Planning Commission. The Planning Director also clarified in his memorandum that he "did [not] release the building permit for the retaining walls because they were referenced in the [SUP-002-2012 permit]," but because he interpreted the retaining walls as the type of limited excavation that needed only a building permit and did not need additional zoning. While there is an 8.5 x 11 inch paper notice that states it should be posted "in a conspicuous place," there is nothing in the record indicating that the notice was actually posted.

{12}    The record does not clearly indicate when the retaining wall was constructed; however, Petitioners maintain that the retaining wall was actually constructed prior to the approval of the 2015 application by the Planning Director. The date of construction is not part of the record. Petitioners maintained that they went to the Planning Director to express their dissatisfaction with the construction of the retaining wall, but that they were turned away.

**D.    The 2016 Permit**

{13}    Finally, in 2016 Healy submitted a third application for an Administrative Permit (Admin.-003-2016 permit), to construct a helipad, parking lot, and driveway entrance. The application included, among other documents necessary for approval of an Administrative Permit, pursuant to Taos, N.M., LUR art. 4, § 4.5.2 (Administrative or Special Use Application Submittal Requirements), an Environmental Impact Study, a determination letter from the Federal Aviation Administration, deeds, and notifications of approvals. The Planning Director deemed the application incomplete and requested further clarification on a number of items, including, for the first time, clarification of the project's impact on the on-site acequias. In relevant part, the letter to Healy stated, "[T]he applicant failed to identify the location of the on-site acequia." Healy was further directed to comply with Taos N.M. LUR art. 4, § 4.8.1(N), and identify the location of any acequias, and submit the application to the applicable acequia commission for review.

{14}    Healy responded to the Director's request for clarification, and in relevant part, pointed to a letter from the Acequia de La Plaza Commission, which stated (incorrectly) that the Acequia de la Plaza was the only on-site acequia on Healy's property.[7] The letter from the Acequia de La Plaza Commission expressed support for the helipad and encouraged the approval of the administrative permit for the helipad. Healy further

---

7The Acequia de la Plaza is not the onsite lateral that is being impacted by the construction of the wall. The lateral stemming from Acequia Madre, which was placed into a culvert upon which the wall was built, is however onsite.

responded that "although there is an acequia or irrigation ditch across the street from [Healy]'s property and south of (behind) the Hondo Seco Volunteer Fire Department property, the ditch is located more than [sixty] feet beyond [Healy]'s property line." "The headgate for the lateral irrigation ditch serving [Healy]'s property is also located more than [sixty] feet beyond [Healy]'s property line and beyond the survey limits. The irrigation gates and irrigation ditches located on [Healy]'s parcel are not maintained by the acequia."[8]

{15}    On December 15, 2016, the Planning Director approved Healy's application for the administrative permit—Admin.-003-2016—subject to multiple conditions. Specifically, Condition No. 20 instructed that Healy "shall provide the Planning Department with a letter advising that the lateral irrigation ditches located within the site are not maintained by the acequia[9] and that the helipad and parking area [would] not interrupt, reduce, or change the flow of water to the parcientes of the lateral irrigation ditches." Pursuant to Taos, N.M., LUR art. 4, § 4.5.3(C) public notice of the decision was posted, and any party aggrieved by the decision had up to thirty days to appeal to the Planning Commission. Taos, N.M., LUR art. 10, § 10.1.1(B) (Appeals).

## II.    Procedural Background

## A.    Appeal to the Taos Planning Commission

{16}    Just over a month later—on January 17, 2017, Petitioners timely appealed the Admin.-003-2016 permit to the Planning Commission. In relevant part, Petitioners raised concerns with Condition No. 20. They claimed that the retaining wall that was built across the lateral interfered with their traditional and legal access to and from the lateral's headgate. Petitioners asserted that Healy's retaining wall was not given a set-back from the Sanchez family property line. Petitioners further complained that, although Healy was directed to provide a letter from the acequia commission prior to the helipad becoming operational, this issue should have been addressed during the design process and before breaking ground. In a response to the appeal, Healy asserted that the lateral irrigation ditch located on the site was not maintained by the Acequia Madre, and "that the helipad and parking area would not interrupt, reduce, or change the flow of water to the parcientes of the lateral irrigation ditch."

{17}    The Planning Commission affirmed the Planning Director's approval for Healy's administrative permit after holding two separate hearings. Healy's permit was affirmed with conditions. The Commission included conditions similar to those set forth by the Planning Department, again including language identical to Condition No. 20. The condition again required Healy to "provide the . . . Planning Department with a letter advising that the lateral irrigation ditches located within the site [were] not maintained by [an a]cequia [commission] and that the helipad and parking area [would] not interrupt, reduce, or change the flow of water to the parcientes of the lateral irrigation ditches."

---

[8]Although not clear by Healy's language, it appears that he is referring to the Acequia Madre.
[9]Although not clear by the language used by the Planning Director, it appears that he is also referring to the Acequia Madre.

The only letter in the record was the one previously provided by the Acequia de La Plaza Commission. The Acequia de la Plaza's letter supports granting the administrative permit for the helipad, parking lot, and driveway entrance. However, the Acequia de La Plaza is not the acequia or lateral that is impacted by the retaining wall. Petitioners again timely appealed the Planning Commission's decision to the County on May 30, 2017.

## B.    Appeal to the County

{18}    Upon its review the County commenced a public hearing and performed an on-site inspection. The County made findings to include in relevant part:

> [Healy] has introduced sufficient evidence that the Acequia Madre . . . which is located off-site will not be disturbed in any way by construction activity and that the development of the subject property is in excess of [twenty] feet of the bank of the Acequia Madre[.] The [County] also finds that the lateral ditches from the head[]gate located on the subject property were encased in culverts prior to the construction of the proposed helipad and not as a result of Administrative Permit Admin.-003-2016. Further, [p]arciantes from the lateral ditch may enter the property and control their respective irrigation flow at the head[]gate and that maintenance of the lateral ditches will be maintained by [Healy].

The County, after considering all the evidence, and the arguments by the parties, affirmed the decision of the Planning Commission subject to multiple conditions.[10] Again in relevant part, the County directed Healy to provide the Planning Commission with a letter advising "that the lateral irrigation ditches located within the site [were] not maintained by the Acequia [Commission][11] and that the helipad and parking area [would] not interrupt, reduce, or change the flow of water to the parcientes of the lateral irrigation ditches." Petitioners then appealed the decision of the County to the district court.

## C.    The District Court Decision

{19}    The district court, in its decision and order stated "[t]he sole issue [was] whether [Healy] was required to obtain the approval of the Acequia Madre . . . prior to the application being approved." The district court concluded that the decision of the County was "based upon substantial evidence in the record, was not fraudulent, arbitrary or capricious[,] and was in accordance with the law." The district court gave deference to the County's interpretation of the LUR and held that laterals were not intended to be

---

10However, according to Petitioners and apparent from the record, the County did not allow Petitioners to present evidence of the lateral being placed into a culvert without a permit, nor did it speak to the 2015 permit for the current retaining wall: the permit which restricted Petitioners' access to the lateral. Additionally, the Planning Director's memorandum specifically recommended a finding that any appeal from the decision on the retaining wall is untimely.

11Again, the County does not make clear which Acequia Commission they are seeking a letter from, but it is assumed they are referring only to the Acequia Madre Commission.

considered acequias. Finally, the district court held that the County properly denied consideration of the permits prior to the 2016 permit.

**DISCUSSION**

**{20}** A petition for writ of certiorari was timely filed with this Court, and we granted the writ. Petitioners raise two issues on appeal: (1) whether a lateral is considered an acequia under the Taos County LUR; and (2) whether the County properly treated Petitioners' appeal of the permit allowing construction of the retaining wall as untimely without considering Petitioners' evidence of piecemeal construction and lack of notice, circumstances that Petitioners' claim excused a late appeal.

**{21}** On certiorari in an administrative appeal of this type, we employ "the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. Our review is limited to ascertaining "whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law." *Id.*; *see* Rule 1-075(R) NMRA (outlining the standards of review applicable to agency action); Rule 1-074(R) NMRA (same). "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of Sierra Club*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. When applying this administrative standard of review, we will not substitute our judgment for that of the fact-finder, but we review questions of law de novo. *Id.*

**I.     The District Court Incorrectly Determined That Laterals Are Not Intended to Be Considered Acequias**

**{22}** In construing the LUR, the County encourages us to defer to its interpretation of the regulations, because as the zoning authority, it interpreted its own zoning ordinance. "When an agency construes a statute that governs it, the [C]ourt will accord some deference to the agency's interpretation." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 6, 146 N.M. 24, 206 P.3d 135. "The [C]ourt will confer a heightened degree of deference to legal questions that implicate special agency expertise[.]" *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28 (internal quotation marks and citation omitted). "However, the [C]ourt is not bound by the agency's interpretation and may substitute its own independent judgment for that of the agency because it is the function of the courts to interpret the law." *Id.* "The [C]ourt should reverse if the agency's interpretation of a law is unreasonable or unlawful." *Id.*

**{23}** In this case, we are required to interpret the LUR and determine and give effect to legislative intent. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. It does not appear from the record that the County

has any particular expertise or experience in determining what should be considered an acequia under the LUR. "Because statutory construction itself is not a matter within the purview of the Commission's expertise, we afford little, if any, deference to the Commission on this matter." *Id.* (internal quotation marks and citation omitted).

**{24}** "In construing municipal ordinances or county zoning ordinances, such as the one here before us, the same rules of construction are used as when construing statutes of the legislature." *Burroughs v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 1975-NMSC-051, ¶ 13, 88 N.M. 303, 540 P.2d 233. "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *N.M. Indus. Energy Consumers*, 2007-NMSC-053, ¶ 20. Guided by classic canons of statutory construction, "[w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* "In addition, we strive to read related statutes in harmony so as to give effect to all provisions[.]" *Id.* We read provisions of a statute "together with other statutes in pari materia under the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law[.]" *Id*. (internal quotation marks and citation omitted).

**{25}** We must determine whether laterals—such as the one that runs between the parties' properties—are subject to the same type of protection from disturbances as are acequias under the LUR.[12] We first look to the language in the LUR. The LUR requires "express permission" from the entity legally responsible for the operation and maintenance of the acequia—the acequia commission—prior to disturbing an acequia. Taos, N.M., LUR art. 4, § 4.8.1 (N). The language at issue further provides:

> *No acequia,* whether onsite or off-site, shall be disturbed in any way by building development or construction activity unless approved or deemed approved by the acequia commission.

*Id.* (emphasis added).

**{26}** The plain language of Taos, N.M., LUR art. 4, § 4.8.1(N) does not clearly identify whether an "acequia" is an "acequia, madre," an "acequia, venita," or perhaps an "acequia, lindero." Thus, it requires the Court to consider whether an acequia, and the acequia subcategories—acequia, madre; acequia, venita, and; acequia, lindero—are all acequias for purposes of Taos, N.M., LUR art. 4, § 4.8.1(N). If a lateral is considered an acequia, according to the LUR, any disturbance must be approved by the applicable acequia commission. We look to the definitions as provided by the LUR:

> Acequia - Referring to both the irrigation *ditch* and the organization of parcientes who use the ditch. The acequia transports surface water from its source, e.g. a stream, a spring, watershed, a river, or a reservoir, to irrigate lands used primarily for agricultural purposes. Also, an acequia is a form of public corporation that is a political subdivision of the State of

---

12For purposes of this opinion, we use the word "lateral" to collectively refer to "acequia, linderos" and "acequia, venitas" as found under the Taos, N.M., LUR art. 2, § 2.1.2.

New Mexico. Like all other political subdivisions, acequias are competent to exercise those powers that the [L]egislature has delegated to them, expressly or by necessary implication.

. . . .

Acequia, Lindero - In most cases, linderos are smaller *ditches* that serve one or more owners. The ditches are commonly located between property owners. Some [a]cequia organizations use this term in the same context as venitas.

Acequia, Madre - The mother *ditch* or main irrigation canal diverting water from stream.

. . . .

Acequia, Venita - Commonly refers to *laterals* originating from the Acequia Madre or [a]cequias that deliver water to individual lands. Some venitas have their own commission and collect additional dues to those of the main ditch.

Taos, N.M., LUR art. 2, § 2.1.2 (emphasis added).

**{27}** Petitioners and Amicus point to these definitions and state that madres, linderos, laterals, contras and venitas are all subcategories or subparts of an acequia included within the overarching term "acequia." The County and Healy contend, on the other hand, that the LUR establishes clear and deliberate distinctions between acequias and laterals, which demonstrate that they are not intended to be considered identical.

**{28}** We do not find the rules of statutory construction relied on by the County particularly helpful. The County and Healy suggest that if this Court were to conclude that a lateral is indeed an acequia under the LUR, it would be adding language to the term "acequia." *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("The [C]ourt will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)); *Marbob Energy Corp.*, 2009-NMSC-013, ¶ 20 (additional language will not be read into the statute language especially if the provision makes sense as written). The County specifically argues that Taos, N.M., LUR art. 4, § 4.8.1(N) only refers to the acequia madre, effectively excluding linderos, venitas, or laterals. If this Court were to construe Taos, N.M., LUR art. 4, Section 4.8.1(N) as applying only to the acequia madre, we would be required to read the word "madre" into the language. If we interpreted the language according to the County's suggestion, Taos, N.M., LUR art. 4, § 4.8.1(N) would read as follows:

> *No acequia* [madre], whether onsite or off-site, shall be disturbed in any way by building development or construction activity unless approved or deemed approved by the acequia commission.

(Emphasis added.) Because the drafters of the LUR can include additional language if they so desire, we will not do this work on their behalf. *Cf. State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)).

{29}    The County and Healy also refer us to language found elsewhere in the LUR, which states that "[a]ll watercourses on the property, including springs, *acequia systems* and related water improvements, which are located within 150 feet of the property, must be shown[,]" and that "acequia systems" shall not be used as drainage ways. Taos, N.M., LUR art. 4, § 4.6.5(B)(18)(a), (b) (emphasis added). The County asks this Court to infer that because the term "acequia systems" exists in one section of the LUR, it is clear that the term "acequia," when used alone, refers only to an acequia madre. Petitioners argue that the term "acequia systems," should not be considered as part of the interpretation under LUR, noting it doesn't appear anywhere else in LUR, but only in a single section, appearing to be "entirely anomalous." We agree with Petitioners that there is no clear indication of intent to apply the term "acequia systems" broadly throughout the LUR, particularly given its absence from the definition of "acequia."

{30}    Not finding clear intent based on the canons of statutory construction relied on by the parties, we turn to the broader context in which the LURs were adopted and operate. The New Mexico Legislature has delegated to counties the statutory authority to create local zoning ordinances and planning commissions. *See* NMSA 1978, § 3-21-1 (2007, amended 2019) ("Zoning; authority of county of municipality"); NMSA 1978, § 4-57-1 (1967) (providing that counties may create planning commissions). Pursuant to this state statutory authority, the County's LURs provide that the regulations must comply with state law and that the regulations "are meant to augment and enhance federal and state law and other county regulations." Taos, N.M., LUR art. 1, § 1.2.4; *see id.* § 1.2.1 (providing that "[t]he Taos County [LUR]'s comply with [NMSA]"). The regulations further provide that "[a]ll development under these regulations shall comply with all county ordinances, the Taos County Comprehensive Plan, and applicable state and federal laws." *Id.* § 1.2.5.

{31}    The New Mexico statutes that govern acequias throughout the state are found in NMSA 1978, Sections 73-2-1 to -68 (1851, as amended through 2019). We pay particular attention to Section 73-2-11, which states in relevant part, "every one of said community ditches beginning at the dam or entrance of the water, *in continued course to the end of the same*, shall be considered as one ditch or acequia only[.]" (Emphasis added.) We reject the County's argument that the exception in this statute somehow negates the lateral's status as an acequia. In our view, the plain language of the state statute, properly construed, means that all smaller ditches, or laterals, that run along the course anywhere from where the water begins, to the end, where the water is carried to a parciente's property to irrigate a field, shall be considered a single acequia. *See*

Buynak, Brigette; Jerold Widdison; and Darcy S. Bushnell. "Acequias." Water Matters! 2015, 1 (2015): 4-1-4-12. https://digitalrepository.unm.edu/utton_watermatters/vol2015/iss1/9 (explaining historical context of acequias and stating, "[t]he acequias include the diversion dams, headgates, flumes, and other features needed to transport water for irrigating fields, gardens, croplands, and pastures"). This language is reflective and supportive of what is stated in the LUR, as stated above, namely that, "[t]he acequia transports surface water from its source, e.g. a stream, a spring, watershed, a river, or a reservoir, to irrigate lands used primarily for agricultural purposes." Taos, N.M., LUR art. 2, § 2.1.2. (defining acequia). Both provisions state that an acequia begins at the source. The state statute indicates that an acequia continues through to the end of the course, while the LUR states an acequia transports water from the source to irrigate lands. Transporting water, to the end of the course of a ditch, is what New Mexico's system of acequias was intended to do.

**{32}**     We also look to early case law from our Supreme Court for more context on the role of acequias:

> New Mexico being in the arid region, the early settlements were established along the banks of perennial rivers, or in the mountain valleys where water from springs and creeks was reasonably certain to be available for irrigation at the needed times. . . . [T]he people built their houses and established their towns and plazas close together, and cultivated the lands in small tracts adjacent to the settlement. . . . [T]he people by their joint effort would construct an irrigation ditch, sufficiently large enough to convey water to their lands for the irrigation of crops. Each individual owned and cultivated a specific tract of land, sufficient to provide food for the needs of his family, and from the main ditch laterals were run to the various tracts of land to be watered.

*Parkview Cmty. Ditch Ass'n v. Peper*, 2014-NMCA-049, ¶ 3, 323 P.3d 939 (quoting *Snow v. Abalos*, 1914-NMSC-022, ¶ 8, 18 N.M. 681, 140 P. 1044). *Parkview* and *Snow* make it clear that acequias are intended for the purpose of irrigating fields and crops. This purpose informs our analysis.

**{33}**     We conclude that the County's legislative body, in promulgating the Taos, N.M., LUR art. 4, § 4.8.1(N), consistent with other state legislative enactments concerning acequias, and the documented history of acequias, intended for laterals to be subject to the same protection as an acequia. Therefore, we determine that Taos, N.M., LUR art. 4, § 4.8.1(N) should be construed to mean that an "acequia" refers to all types of acequias and laterals as provided for under Taos, N.M., LUR art. 2, § 2.1.2. Under this construction, the lateral at issue should not have been disturbed without "express permission" from the appropriate acequia commission for its operation and maintenance. Taos, N.M., LUR art. 4, § 4.8.1(N) (seeking approval from the acequia commission). Accordingly, we reverse the district court's decision, and hold that the impacted lateral in this case is in fact an acequia.

## II.    The County's Failure to Provide Notice to the Acequia Commission and the Other Petitioners Created an Unusual Circumstance That Excuses Any Untimely Appeal

**{34}**    Petitioners additionally assert that they were entitled to notice, and an opportunity to object and be heard prior to the lateral being placed into culverts and a retaining wall constructed across the acequia—construction that was authorized by 2012 and 2015 permits. They claim that they were improperly denied notice due, in large part, to the piecemeal nature of the construction, and that therefore their appeal of the 2016 permit should be treated as a timely appeal of the entire project, including the grant of the earlier permits that interfered with the acequia without permission. Petitioners argue that Healy's series of permitted and unpermitted construction between 2012 and 2016 never allowed an opportunity for them to object to a project that has serious and significant effects on the acequia serving their land and on their traditional way of life. Petitioners contend that they were prohibited from even discussing this course of events at the administrative and district court hearings addressing the 2016 permit. The record does not clearly indicate when Petitioners went to the Planning Department to express dissatisfaction with the construction of the retaining wall; however, Petitioners claim that they did in fact go to the Planning Department and were turned away. The record proper does not include any written complaints until after Healy submitted his application for the 2016 permit.

**{35}**    The County, on the other hand, urges this Court to limit its focus to the 2016 permit, claiming it is the only permit properly before us for review. The County asks us not to review Petitioners' grievances regarding the prior permitted and unpermitted construction, which allowed the lateral to be culverted and the retaining wall to be constructed. The County claims the culverts were installed prior to the 2012 permit, and Petitioners did not challenge or object to the acequias being culverted until four years later. The County and Healy further assert that there was permission from a Petitioner's brother to put the lateral in a culvert and then bury it in 2011, before the 2012 permit was issued. Petitioners respond, arguing that Sanchez's brother was misled, and even if he was not, his brother is a minority owner and therefore did not have authority to grant permission.[13] Petitioners further state that the acequia commission is the proper party who should have been contacted, and whose permission was required by the LUR, not that of the individual parcientes. We construe the second issue to be whether Petitioners' lack of notice, combined with the piecemeal nature of the construction, together constitute unusual circumstances justifying the late filing of an appeal.

**{36}**    We begin by reiterating that in our foregoing discussion, we conclude that laterals are acequias. We therefore agree with Petitioners that notification and permission from the proper acequia commission was required. As we have stated, obstructing acequias—or laterals—is prohibited by the LUR. *See* Taos, N.M., LUR art. 4, § 4.8.1(N) ("No acequia, whether on-site or off-site, shall be disturbed in any way by building development or construction activity unless approved or deemed approved by the

---

13The Court notes that Healy does not claim to have received permission from any of the other parcientes affected by the lateral being placed in a culvert.

acequia commission."); *see also id.* § 4.8.1(N)(1), (2). Healy initially failed to provide notice and seek approval from the Acequia Madre Commission when it placed the lateral in culverts. The Planning Director and the County also failed to ensure there was notice and approval from the acequia commission prior to approving multiple, piecemeal permits that allowed Healy to build over the culverted lateral and restricted the parcientes access to the headgate. We hold that these actions were in violation of Taos, N.M., LUR art. 4, §4.8.1(N).

**{37}**   Next, we address the notice to the remainder of the Petitioners. The County points to Rule 1-074(E) and NMSA 1978, Section 39-3-1.1(C) (1999), which specify that a person may appeal an agency decision within thirty days of the decision. While the County is correct that typically all appeals must be filed within thirty calendar days, "the appropriate inquiry for determining if a court can exercise its 'discretion and entertain an appeal even though it is not timely filed' is whether 'unusual circumstances beyond the control of the parties' are present." *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2010-NMSC-034, ¶ 18, 148 N.M. 692, 242 P.3d 259 (quoting *Trujillo v. Serrano*, 1994-NMSC-024, ¶¶ 15, 19, 117 N.M. 273, 871 P.2d 369). An untimely appeal may be excused when "exceptional circumstances"—circumstances outside of a party's control—substantially impair the ability of an aggrieved party to appeal. *Sisson v. D.C. Bd. of Zoning Adjustment*, 805 A.2d 964, 969 (D.C. 2002)

**{38}**   Similar to New Mexico's unusual circumstances principle, the District of Columbia utilizes an "exceptional circumstances" principle to excuse the untimely filing of an appeal when notice of the entire scope of work performed is not afforded to a party because of a piecemeal nature in seeking building permits. *Id.* at 969-70. In *Sisson*, the D.C. Court of Appeals reviewed how a piecemeal permitting process for construction on a neighbor's land impaired another neighbor's ability to timely challenge the construction. There, the Court held that the aggrieved neighbor could not be charged with notice given the piecemeal way permits for changes were sought, ultimately adding up to substantial construction. *Id.* at 970. The Court reasoned that "[b]ecause of the cumulative, piecemeal nature of the applications, the full extent of [the] construction project could not be discerned as each individual permit was issued and therefore they must be considered as a whole." *Id.* at 969, 970 (internal quotation marks omitted).

**{39}**   Here, because Healy's permits were sought in a piecemeal fashion, where each permit application failed to reflect the entire scope of Healy's project, Petitioners ability to object or appeal the permits was substantially impaired. A thorough search of the record does not indicate when Petitioners were put on notice of the proposed construction of the retaining wall or its relocation to block their access to the headgate, nor does the County or Healy assert that they took any action to give Petitioners notice. Petitioners did not receive notice that the retaining wall would cover their traditional access to the lateral, that the Sanchez family fence would be torn down, and that the wall would be constructed without a setback from Petitioners' property line. Because of these errors by the Planning Director and the County in failing to notify Petitioners and permit the construction appropriately, the scope and interference by the retaining wall was not apparent to Petitioners until the work was substantially complete. We conclude

that the piecemeal and misleading permitting process created an unusual or exceptional circumstance which extends the time to appeal. Petitioners did not have proper notice of the construction, and this excuses Petitioners' delay in filing an appeal.[14]

**{40}**    Therefore, we hold that that Petitioners' untimely appeal regarding the construction of the retaining wall should be excused. We remand this case to the Taos County Board of Commissioners to hold a new hearing regarding all the permits issued consistent with this opinion.

**CONCLUSION**

**{41}**    We reverse and remand for proceedings consistent with this opinion.

**{42}    IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**

---

[14]While our Supreme Court has not identified a bright line rule regarding how much time may pass under unusual circumstances and still permit an otherwise untimely appeal to be heard, the Court has before held that even a delay of up to four years may be excused if there are unusual circumstances and insufficient notice to appellants. *See Neal v. N.M. Pub. Regul. Comm'n*, No. S-1-SC-35638, dec. at 7 (N.M. Sup. Ct. Dec. 15, 2016) (non-precedential) ("If notice in [the case] was insufficient so that [the a]ppellants had no opportunity to participate in the case, it follows that [the a]ppellants would have had no opportunity to file a timely appeal in the case.").