The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **September 11, 2023**

**No. A-1-CA-40279**

**MARIE A. SHOOK, ED OPPENHEIMER,
and JOAN CONROW,**

Plaintiffs-Appellants,

v.

**GOVERNING BODY OF THE CITY OF
SANTA FE,**

Defendant-Appellee,

and

**ZIA STATION, LLC,**

Real Party in Interest.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Kathleen McGarry Ellenwood, District Court Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jenica L. Jacobi
Jacques H. Chouinard
Albuquerque, NM

for Appellants

Herdman MacGillivray Fullerton Cameron Pumarejo Honeycutt PC
Frank T. Herdman
Santa Fe, NM

Erin K. McSherry, City Attorney
Marcos D. Martinez, Senior Assistant City Attorney
Santa Fe, NM

for Appellee

**OPINION**

**WRAY, Judge.**

{1}     The present case arose from an administrative proceeding relating to five applications submitted by Zia Station, LLC (Developer) seeking zoning changes and amendments to the land use plans of the City of Santa Fe (the City). The City's Governing Body (the Governing Body) approved Developer's request, which Marie Shook, Ed Oppenheimer, and Joan Conrow (Residents) appealed, first to the district court and then to this Court. In both appeals, Residents argued that the Governing Body did not afford sufficient process during a public hearing about Developer's plans for their community. The City maintains that Residents' appeal should be dismissed. It is well established that in administrative appeals brought under Rule 1-074 NMRA, the district court can simultaneously exercise appellate and original jurisdiction. *See Maso v. N.M. Tax'n & Revenue Dep't*, 2004-NMCA-025, ¶¶ 6, 17, 135 N.M. 152, 85 P.3d 276. The capacity in which the district court acted depends on whether the issue raised in the district court was within the administrative agency's jurisdiction to determine. *Id.* ¶¶ 13-14. Whether the district court wielded appellate or original jurisdiction dictates the appropriate procedures for this Court's further review. *See Barraza v. N.M. Tax'n & Revenue Dep't*, 2017-NMCA-043, ¶¶ 16-17, 395 P.3d 527 (explaining that in Rule 1-074 appeals, "[w]hen the district court sits in its appellate capacity . . . there is no right to a further appeal in this

Court, [instead], a timely petition for a writ of certiorari must be filed in this Court, which is granted or denied at the discretion of this Court" under Rule 12-505 NMRA).

{2} Based on these principles, the City maintains that Residents' due process appeal to this Court should be dismissed, because the district court exercised its appellate jurisdiction, and Residents should have filed a petition for certiorari seeking this Court's discretionary review instead of taking a direct appeal by filing a notice of appeal. *See Wakeland v. N.M. Dep't of Workforce Sols.*, 2012-NMCA-021, ¶¶ 15, 22, 274 P.3d 766 (explaining that "unlike cases in which a party has an appeal as of right, review in this Court of the district court's order on appeal from an administrative agency is discretionary"). We hold that (1) the district court exercised its original jurisdiction to decide Residents' due process appeal, and therefore, Residents properly initiated a direct appeal by filing a notice of appeal; and (2) the Governing Body did not violate Residents' right to procedural due process. We therefore affirm.

**BACKGROUND**

{3} Because Residents limit their appeal to the process that they received during the public hearings on Developer's applications and do not challenge the City's factual findings or the substantive decision, we rely on the City's findings of fact to set forth the factual background.

{4}     Developer submitted five separate applications to the City in order to construct apartments and space for retail, offices, and restaurants. Near the start of the process, long before the applications reached the Governing Body, ninety members of the public attended a virtual early neighborhood notification (ENN) meeting with Developer and the City's staff (City Staff). A neighborhood association requested a second ENN with Developer, which was held, and a third virtual meeting with the public was subsequently conducted by City Staff. After a period of written public comment followed by a two-day presentation that included oral public testimony, the Planning Commission voted to approve the applications.

{5}     The Governing Body next considered the applications and held the public hearing over two separate, virtual meetings. The agenda provided instructions to the public about how to submit written comment in advance and how to offer testimony at the hearing on the first day. Thirty-nine members of the public submitted written comment to the Governing Body before the public hearing. On the first day of the hearing, the Governing Body received testimony from City Staff, Developer, and forty-four members of the public. Developer spoke for approximately fifty minutes, while the forty-four members of the public were each limited to two minutes for their presentations. Before concluding the first day, the Governing Body questioned some members of the public about their testimony. On the second day, the Governing Body engaged City Staff and Developer with questions, but the public was limited

to watching the hearing online and could not participate. At the end of the second day, the Governing Body voted to approve the five applications.

{6} Residents filed a notice of appeal in the district court under Rule 1-074(A) NMRA (setting forth the procedures governing appeals from the decisions of administrative agencies when there is a statutory right to appeal). Residents, however, did not continue to use the Rule 1-074 procedures. *See* Rule 1-074(V) (directing parties to Rule 12-505 NMRA to appeal in this Court the district court's review of the administrative decision); Rule 12-505(A)-(D) (governing this Court's discretion to review a district court's Rule 1-074 decision and requiring an appellant to file a petition for certiorari containing specific information within thirty days of the district court's order). After the district court rejected Residents' argument that the Governing Body had violated Residents' due process rights at the public hearing, Residents instead turned to Rule 12-201 NMRA ("Appeal as of right."), and filed a notice of direct appeal in this Court within thirty days of the district court's decision, followed thirty days later by a docketing statement that contained statements of the case and legal issues, as well as supporting legal authority. *See* Rule 12-208(B), (D) NMRA (docketing statements).

{7} In this Court, Residents continue to argue that the Governing Body denied them due process, but the City maintains that the appeal should be dismissed. The City asserts that because Residents did not follow Rule 1-074(V), the appeal to this

4

Court is untimely under Rule 12-505. Specifically, the City argues that Residents filed no document that could be construed as a petition for certiorari within thirty days of the district court's decision, because the notice of appeal that Residents filed did not contain the information required by Rule 12-505, and the docketing statement was not filed within thirty days of the district court's decision. *See Wakeland*, 2012-NMCA-021, ¶ 19 (permitting a docketing statement to substitute for a petition for writ of certiorari if the docketing statement is filed within thirty days of entry of the district court's order). The City initially brought these arguments in a motion to dismiss, which this Court denied. In the answer brief and by motion for rehearing, the City has renewed its position that Residents' appeal to this Court is procedurally deficient and should be dismissed.

**DISCUSSION**

{8}   We first consider the City's procedural challenge and then evaluate the process afforded by the Governing Body.

**I.      Residents' Appeal Was Timely**

{9}   In order to determine the appropriate procedure for Residents' appeal of the district court's decision, we must first determine in what capacity the district court exercised its jurisdiction when it reviewed the Governing Body's decision. *See Barraza*, 2017-NMCA-043, ¶¶ 16-17. When acting as an appellate court, the district court's jurisdiction "is limited by the scope of appellate review." *Maso*, 2004-

5

NMCA-025, ¶ 13. In those circumstances, the "district court lack[s] appellate jurisdiction to resolve the matter" if the administrative body lacked the authority to itself consider the argument that is raised on appeal in the district court. *Id.* On the other hand, the district court's original jurisdiction is not so limited. *Id.* ¶¶ 14, 17; *see* N.M. Const. art. VI, § 13 ("The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as provided by law."). If a party

> appeals issues that are within the statutory limits of an [administrative] hearing, and the [party] also states claims that are beyond the scope of such a hearing, the district court should consider each claim according to its appropriate standard of review and maintain the distinction between the [district] court's appellate and original jurisdiction in rendering its decision.

*Maso*, 2004-NMCA-025, ¶ 17. Thus, in any given administrative appeal, "the district court can simultaneously exercise its appellate and original jurisdiction." *Id.*

{10}    The capacity in which the district court acts "has very real consequences," which impact both the standard of review and the procedure for appealing to this Court. *See Barraza*, 2017-NMCA-043, ¶¶ 16-17 (contrasting the standard of review and appellate procedure when the district court acts in an appellate capacity as opposed to when it exercises its original jurisdiction). Importantly, if the district court acts in its appellate capacity, "there is no right to a further appeal in this Court" and "a timely petition for a writ of certiorari must be filed in this Court, which is granted or denied at the discretion of th[is] Court." *Id.* ¶ 17. But if the district court

6

exercises its original jurisdiction, "an aggrieved party has a right to appeal to this Court by filing a timely notice of appeal in the district court and a timely docketing statement in this Court." *Id.* To resolve the question of whether the district court exercised appellate or original jurisdiction, our appellate courts have developed an analysis rooted in the scope of the administrative agency's statutory authority. *See, e.g.*, *Schuster v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-025, ¶¶ 1, 9-10, 283 P.3d 288; *Barraza*, 2017-NMCA-043, ¶¶ 8, 11, 16; *Maso*, 2004-NMCA-025, ¶¶ 8-9, 12.

{11} The agency's statutory authority was key to this Court's analysis in *Maso*. 2004-NMCA-025, ¶ 12. In that case, a Spanish-speaking driver was provided with an English-language notice of license-revocation procedures, including the deadline to request a hearing. *Id.* ¶¶ 4-5. The driver filed an untimely request for hearing and argued that he had not understood the English-language notice. *Id.* ¶ 5. The hearing officer denied the late request. *Id.* The driver appealed to the district court and contended that the denial of the hearing violated due process. *Id.* ¶ 6. This Court, in considering whether the due process claim arose in the district court's original or appellate jurisdiction, turned first to the hearing officer's statutory authority. *Id.* ¶¶ 1-2, 7. We concluded that the relevant statute limited the hearing officer's jurisdiction to certain enumerated issues, which did not include "the constitutional question raised by [the d]river." *Id.* ¶ 12; *see also Schuster*, 2012-NMSC-025, ¶ 21

7

("*Maso* stands for the legal proposition that any constitutional challenge beyond [the agency's] scope of statutory review is brought for the first time in district court under its original jurisdiction."). The hearing officer therefore did not have statutory authority to consider the due process argument that was later raised on appeal in the district court. *See Schuster*, 2012-NMSC-025, ¶ 21. As a result, this Court construed the district court's decision as "properly issu[ed] pursuant to the district court's original jurisdiction." *Maso*, 2004-NMCA-025, ¶ 15.

{12}     Subsequently, our Supreme Court decided *Schuster*, which involved a license revocation proceeding. 2012-NMSC-025, ¶ 1. The relevant statute required the hearing officer to determine whether the driver had been "arrested" and at issue was whether to do that, the hearing officer had to also evaluate whether the arrest had been constitutional. *Id.* ¶ 10. After analysis, our Supreme Court concluded that the plain meaning of the term "arrest" in the statute required that the circumstances of the arrest had complied with constitutional protections. *Id.* ¶¶ 9-10, 17-18. Therefore, the administrative agency was required to "find that the arrest of a driver charged with driving while intoxicated (DWI) was constitutional as one of the prerequisites to revoking the driver's license." *Id.* ¶ 1. As a result, our Supreme Court determined that "the district court must review any appeal of [the agency's] ruling in its appellate capacity." *Id.* ¶ 22.

8

**{13}** This Court faced the issue again a few years later in *Barraza* and considered whether the driver's license revocation statute "grant[ed] authority to [the agency] to decide [the d]river's due process claim" relating to whether the officer complied with statutory requirements during arrest. 2017-NMCA-043, ¶¶ 8, 14. The specific question for the *Barraza* hearing officer was whether the arresting officer afforded the driver due process by giving the driver the statutorily required warnings about the consequences of refusal. *Id.* ¶¶ 14-15. This Court concluded that the hearing officer "was both authorized and required to answer constitutional questions arising from the language of" the particular statute, and as a result, the district court "must, on appeal, hear and decide the question in its appellate capacity and not under its original jurisdiction." *Id.* ¶ 15.

**{14}** A common thread running between these cases and others is whether the scope of the administrative agency's statutory authority encompasses the issue raised by the appellant on appeal to the district court. *See, e.g.*, *El Castillo Ret. Residences v. Martinez*, 2015-NMCA-041, ¶ 18, 346 P.3d 1164. The City directs us to rely on NMSA 1978, Section 3-21-6(B) (1981), and argues that the statute permits the City "to determine the manner in which the public hearing . . . was conducted" and therefore, as in *Schuster* and *Barraza*, the district court acted in its appellate capacity. We therefore turn to consider, de novo, the authority granted to the Governing Body by Section 3-21-6(B). *See Schuster*, 2012-NMSC-025, ¶ 9 ("Statutory interpretation

9

is an issue of law, . . . review[ed] de novo." (internal quotation marks and citation omitted)).

{15}    Section 3-21-6(B) provides that "[n]o zoning regulation, restriction or boundary shall become effective, amended, supplemented or repealed until after a public hearing at which all parties in interest and citizens shall have an opportunity to be heard" and outlines the procedure for providing notice of the public hearing. This statute simply requires the Governing Body to hold a public hearing, provide interested parties an opportunity to be heard, and give interested parties particular notice. The City does not argue otherwise and carefully contends that the district court's appellate jurisdiction was triggered because Section 3-21-6(B) gives the Governing Body the authority to "determine what process was due" and discretion "to determine the manner in which the public hearing" was conducted.

{16}    We disagree that a statutory directive to provide due process inherently includes the authority for the administrative agency to evaluate the constitutionality of the process that the administrative agency is itself providing or has provided. *See El Castillo*, 2015-NMCA-041, ¶ 22 ("Based on the statutory language that identifies the responsibilities of protests boards, considered alongside the cases we have examined, we conclude that it would be inappropriate to hold that, because the protests boards have the general duty to hear and decide protests of a denial of a claim of exemption, this duty automatically includes substantive constitutional

10

issues that have the same force and effect as a judgment of the court."); *Victor v. N.M. Dep't of Health*, 2014-NMCA-012, ¶ 24, 316 P.3d 213 ("Nothing in these regulations supports an inference that the hearing officer, who need not be an attorney, may consider or rule upon the issue of the constitutionality of the process afforded by the regulations."). Contrary to the City's position, both *Schuster* and *Barraza* involved different statutory authority and procedural postures.

{17} In *Schuster* and *Barraza*, the relevant statute required the hearing officer to determine whether certain statutory elements had been met based on the past conduct of other actors. In both cases, the statute mandated the hearing officers to decide whether a past act complied with constitutional directives, and the district courts, in reviewing the hearing officers' determinations, would exercise appellate jurisdiction. *Schuster*, 2012-NMSC-025, ¶¶ 19, 22; *Barraza*, 2017-NMCA-043, ¶ 15. In the present case, however, the Governing Body would be reviewing the constitutionality of its own procedures without any statutory authority to do so. *See* § 3-21-6(B). The present case is more like *Maso*, because in that case, the constitutional question was the refusal of the hearing officer to grant an untimely request for hearing. *See* 2004-NMCA-025, ¶¶ 5-6. When the driver appealed to the district court, the *Maso* hearing officer had not first considered whether the denial of the hearing had violated due process—that was a decision the district court was to address for the first time, not as a review of the hearing officer's decision but as a

11

review of the hearing officer's actions. *Id.* ¶¶ 15-16. Similarly, in the present case, Section 3-21-6(B) gives the Governing Body authority to establish procedures. The district court reviewed the constitutionality of the procedures implemented by the Governing Body and not any decision by the Governing Body about whether Residents had received constitutionally sufficient due process. *See Los Chavez Cmty. Ass'n v. Valencia Cnty.*, 2012-NMCA-044, ¶¶ 10-11, 277 P.3d 475 (determining that the district court exercised original jurisdiction to determine whether a commissioner improperly refused to recuse).

{18} We see this distinction as crucial—whether the governing statute requires (1) a constitutional determination by the administrative agency, or (2) merely demands compliance with the constitution. In the first circumstance, the district court would act in its appellate jurisdiction under Rule 1-074, which would trigger discretionary review by this Court under Rule 12-505. In the second, the district court would act in its original jurisdiction and direct appeal to this Court is appropriate under Rule 12-201. In the present case, Section 3-21-6(B) requires the Governing Body to comport with due process but neither mandates nor permits the Governing Body to evaluate the constitutionality of its own actions. As a result, Residents' appeal to the district court arose under its original jurisdiction, and the subsequent appeal to this Court is not governed by Rule 12-505 and its associated timelines and procedural requirements.

12

{19} The City resists this conclusion based on its perception that "due process claims are routinely reviewed" by the district courts pursuant to "Rule 1-074, Rule 12-505, and the administrative standard of review." In most of the cases cited by the City to support this proposition, the parties do not appear to have disputed either the process for appeal or the standard of review.[1] Thus, the question before us—whether the authority granted to the Governing Body by Section 3-21-6(B) placed the due process issue within the appellate or the original jurisdiction of the district court— did not arise in the City's cited cases and those cases therefore do not assist in our resolution of the dispute in the present case.

---

[1]*See Rayellen Res., Inc. v. N.M. Cultural Props. Rev. Comm.*, 2014-NMSC-006, ¶¶ 11, 15, 319 P.3d 639 (noting that a petition for writ of certiorari was filed and the appellate standard of review); *Benavidez v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 2021-NMCA-029, ¶¶ 12, 16, 493 P.3d 1024 (same); *Skowronski v. N.M. Pub. Educ. Dep't*, 2013-NMCA-034, ¶¶ 1, 10-24, 298 P.3d 469 (same); *N.M. Bd. of Psych. Exam'rs v. Land*, 2003-NMCA-034, ¶¶ 3-6, 133 N.M. 362, 62 P.3d 1244 (same); *W. Bluff Neighborhood Ass'n v. City of Albuquerque*, 2002-NMCA-075, ¶¶ 5-6, 132 N.M. 433, 50 P.3d 182 (same), *overruled on other grounds by Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16 n.10, 133 N.M. 97, 61 P.3d 806 (adopting a new standard of review for administrative appeals); *Martinez v. N.M. Eng'r Off.*, 2000-NMCA-074, ¶¶ 37-46, 48, 129 N.M. 413, 9 P.3d 657 (considering due process without referencing a disputed standard of review and later noting Rule 1-074); *Nichols v. Bd. of Cnty. Comm'rs of Taos*, A-1-CA-36002, mem. op. ¶¶ 4-5 (N.M. Ct. App. Dec. 31, 2018) (nonprecedential) (noting that a petition for writ of certiorari was filed and the standard of review); *Esquibel v. City of Santa Fe*, No. 27,548, mem. op. ¶ 9 (N.M. Ct. App. June 17, 2009) (nonprecedential) (same); *see also Romero v. City of Santa Fe*, 2006-NMCA-055, ¶ 27, 139 N.M. 440, 134 P.3d 131 (explaining that we are not bound by memorandum opinions).

{20} For these reasons, we deny the City's motion for rehearing and turn to Residents' due process challenge.

## II. The Governing Body's Procedures Did Not Deprive Residents of Due Process

{21} As we have noted, Residents contend that the Governing Body's procedures for the quasi-judicial public hearing denied them due process, a question we consider de novo. *See Los Chavez Cmty. Ass'n*, 2012-NMCA-044, ¶ 12. Our Supreme Court has explained that "interested parties in a quasi-judicial zoning matter are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter . . . and to a record made and adequate findings executed." *Albuquerque Commons P'ship v. City Council of Albuquerque*, 2008-NMSC-025, ¶ 34, 144 N.M. 99, 184 P.3d 411 (internal quotation marks and citation omitted). Quasi-judicial hearings need not follow "the same evidentiary and procedural standards applicable to a court of law, [but] must adhere to fundamental principles of justice and procedural due process." *W. Bluff Neighborhood Ass'n*, 2002-NMCA-075, ¶ 46; *see State ex rel. Battershell v. City of Albuquerque*, 1989-NMCA-045, ¶¶ 16-17, 108 N.M. 658, 777 P.3d 386 (discussing the quasi-judicial nature of administrative zoning hearings). To determine whether due process protections were satisfied, we apply the test from *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976) and balance

14

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re Comm'n Investigation Into 1997 Earnings of U.S. West Commc'ns, Inc.* (*West*), 1999-NMSC-016, ¶ 26, 127 N.M. 254, 980 P.2d 37 (alteration, internal quotation marks, and citation omitted).

{22}     The parties do not engage in *Mathews* balancing, though New Mexico courts have generally applied the test to administrative proceedings, including in the zoning context. *See id.* ¶¶ 1, 26 (applying *Mathews* in the administrative rate-making context); *Bogan v. Sandoval Cnty. Planning & Zoning Comm'n*, 1994-NMCA-157, ¶¶ 48-49, 119 N.M. 334, 890 P.2d 395; *see also Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶¶ 30-31, 137 N.M. 161, 108 P.3d 1019 (approving this Court's application of the *Mathews* test in a public employment dispute despite the parties' failure to use the test, because "appellate courts can and must apply the appropriate law"). The parties focus primarily on the Residents' individual challenges to the procedures used and the substitute procedural safeguards for which Residents advocate. We view the parties' arguments to implicate the second *Mathews* factor—the risk of an erroneous deprivation of rights and the value of substitute procedures. We first apply this analysis to Residents' individual challenges to the procedures used and then turn to the proceedings as a whole. *See*

15

*West*, 1999-NMSC-016, ¶ 26 (considering the "proceedings as a whole" to balance the *Mathews* factors (internal quotation marks and citation omitted)); *City of Albuquerque v. Chavez*, 1998-NMSC-033, ¶ 14, 125 N.M. 809, 965 P.2d 928 (considering "the pre- and post-termination proceedings as a whole" in order to assess the risk that the rights would be erroneously deprived).

**A.     The Individual Procedures Challenged by Residents Do Not Establish Due Process Violations**

{23}     Residents maintain that the Governing Body's public hearing on the five applications did not afford constitutionally sufficient due process because (1) public testimony was limited to two minutes per person, (2) the public was not permitted to cross-examine witnesses, and (3) members of the public were not permitted to share their screens or appear visually to the Governing Body. We address each procedural challenge in turn.

**1.     Time Limitations on Public Testimony**

{24}     Residents argue that two minutes was simply not enough time to satisfy due process requirements, and cite several cases that address time limits for public comment in administrative hearings. These cases, however, do not limit the constitutional analysis to a black-and-white acceptance or rejection of a particular time limitation, but instead, each court considered the time limitation within the

context of the entire process and opportunity to be heard.[2] Based on Residents' authorities, we decline to consider the two-minute limitation in isolation or hold that the time limit alone violated due process. *See Cerrillos Gravel Prods., Inc. v. Bd. of Cnty. Comm'rs of Santa Fe*, 2005-NMSC-023, ¶ 28, 138 N.M. 126, 117 P.3d 932 (observing that "[a] limit of two minutes per person raises concerns,[and w]hether those concerns rise to the level of due process violations depends on context and a full consideration of facts and circumstances").

## 2. An Interested Party's Right to Cross-Examination

{25} The district court determined that Residents, as nonparties to the administrative proceeding, had no right to cross-examine witnesses, including

---

[2]*See W. Bluff Neighborhood Ass'n*, 2002-NMCA-075, ¶ 47 (considering a five-minute time limit together with written comments and the agency's "efforts to be fair to all parties"); *Bennett v. City Council of Las Cruces*, 1999-NMCA-015, ¶¶ 15-16, 126 N.M. 619, 973 P.2d 871 (including the time limits as well as letters from citizens, minutes and statements from earlier hearings, and reports from other departments); *In re Jerome Cnty. Bd. of Comm'rs*, 281 P.3d 1076, 1091-92 (Idaho 2012) (approving a four-minute limitation when the board also accepted extensive written submissions, testimony from many people, and some rebuttal); *Neighbors for a Healthy Gold Fork Valley v. Valley Cnty.*, 176 P.3d 126, 132-33 (Idaho 2007) (considering the neighbors' opportunity to present written evidence and objections at an earlier hearing, as well as written exhibits at the challenged hearing); *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 148 P.3d 1247, 1258-59 (Idaho 2006) (observing that despite a two-minute limit on public comment at a hearing, the plaintiff was able to argue and present evidence at a preliminary hearing and during the appeals); *People ex rel. Klaeren v. Vill. of Lisle*, 781 N.E.2d 223, 224-25, 236-237 (Ill. 2002) (considering the circumstances of the particular case, including "the size of the public audience," to conclude that "the two-minute time limit imposed here would have been clearly improper" in a proceeding that involved three different village bodies convening hearings on three proposals in one day).

17

Developer's representative, and further did not seek to cross-examine any witnesses. On appeal, Residents contend that they (1) had no opportunity to join the proceedings as parties; (2) did not need to request cross-examination during the hearing because the Governing Body had no jurisdiction to decide questions of due process and the matter arose under the district court's original jurisdiction; and (3) have a due process right to cross-examination. We assume for the purposes of this appeal that the status of each Resident as an interested party and not a party to the administrative proceedings makes no difference, but we reject Residents' position that they were not required to ask for cross-examination in order to preserve the argument that the Governing Body's denial of cross-examination violated due process.

{26} It is well established that due process claims must be preserved in administrative proceedings, subject to the usual exceptions to preservation. *See, e.g.*, *Land*, 2003-NMCA-034, ¶ 25 (noting that due process is not exempt from preservation requirements); *see also* Rule 12-321(B) NMRA (listing preservation exceptions). The Governing Body must have been alerted to any alleged deficiencies, created a record for review, and been given the opportunity to correct or address those perceived errors. *See Lopez v. Las Cruces Police Dep't*, 2006-NMCA-074, ¶ 6, 139 N.M. 730, 137 P.3d 670.

18

{27} At the public hearing in the present case, two Residents and another member of the public protested the exclusion of the public from participating in the second day of the hearing. Because the Governing Body reserved the second day for questioning Developer and City staff, these protests from the public necessarily alerted the Governing Body that Residents wanted to cross-examine in some way. We are therefore satisfied that the Governing Body was alerted to issues related to cross-examination and had a chance to address those complaints. *See id.* (concluding that the district court "was alerted to the issue" and decided the issue as a matter of law).

{28} Residents contend that "cross-examination of witnesses is a fundamental element of due process in quasi-judicial proceedings," and they cite *Albuquerque Commons*, *Battershell*, and *Klaeren*. We disagree that these cases support a conclusion that in order to satisfy due process in all cases, interested parties must be permitted to directly cross-examine witnesses. In *Albuquerque Commons*, our Supreme Court stated in relevant part that generally, "interested parties in a quasi-judicial zoning matter are entitled to an opportunity to . . . present and rebut evidence." 2008-NMSC-025, ¶ 34 (internal quotation marks and citation omitted). The circumstances of that case did not require our Supreme Court to elaborate on the parameters of this entitlement. In *Battershell*, the petitioners appealed the denial of a conditional use permit and argued in part that the city failed to provide due

19

process by not complying with an ordinance that permitted parties to question witnesses. 1989-NMCA-045, ¶¶ 1, 7, 18. At the hearing, the *Battershell* petitioners

> objected to the presentation of testimony of any persons who had not been parties at the hearing before the zoning hearing examiner, the consideration of matters which were outside the issues raised on appeal by appellants, the declaration by the [commission] chairman that the commission would not consider any objections to testimony, would not permit cross-examination, and that the commission would consider hearsay evidence.

*Id.* ¶ 8. While this Court in *Battershell* stated that "[i]t was error for the [commission] to refuse to permit petitioners reasonable cross-examination of witnesses opposing their application," *id.* ¶ 18, the decision to remand for a new hearing was based on the failures to comply with the zoning ordinance and to afford due process, as well as the admission of improper evidence, *id.* ¶ 24. In *Klaeren*, the Supreme Court of Illinois considered quasi-judicial proceedings that "directly affect the legal rights of individuals" and held that due process requires interested parties to have "the right to cross-examine adverse witnesses." 781 N.E.2d at 234-35 (internal quotation marks and citation omitted). The Supreme Court of Illinois noted, however, that "the right is not unlimited and may be tailored by the [decision-maker] to the circumstances specifically before it." *Id.* at 235; *see also id.* ("A municipality should be free to adopt reasonable limitations on the right of cross-examination uniquely suited to local conditions, but the reasonableness of any limitation on the rights of

adjoining property owners must be judged in light of the potential impact on property values in the neighborhood." (internal quotation marks and citation omitted)).

{29}     In the present case, the Governing Body reasonably tailored the public hearing to the circumstances before it and permitted Residents to rebut Developer's presentation armed with information gathered from the earlier proceedings. By the time the members of the public testified before the Governing Body on the first day, Residents had attended at least three other presentations by Developer—the two ENN meetings and the Planning Commission meeting. Resident Conrow submitted written comment to the Governing Body before the public hearing about defects in Developer's earlier presentations. At the Governing Body's public hearing, Residents challenged specific aspects of Developer's plans in oral testimony, after Developer testified. Later in the hearing, when answering the Governing Body's questions, Resident Oppenheimer detailed problems with Developer's plans. These circumstances do not align with the multiple deprivations outlined in *Battershell*, nor the complete denial of the public's opportunity to rebut as was the case in both *Battershell* and *Klaeren*. Though Residents did not have the opportunity to directly question Developer during the public hearing before the Governing Body, the Governing Body did receive the written public comment and oral public testimony from the Planning Commission, in which the public and Residents had numerous opportunities to learn about Developer's plans and rebut Developer's arguments.

21

Those prior interactions between Developer and Residents also permitted Residents to formulate comments and testimony in the Governing Body proceedings that were responsive to Developer's presentation. For this reason, we decline to hold that the limitations on Residents' opportunity to cross-examine witnesses alone support a conclusion that the Governing Body afforded insufficient process.

**3.      The Use of Visual Media and the Public's Appearance by Video**

{30}      Residents additionally maintain that because the public was not permitted to be on camera or present documents by sharing their screens during the virtual public hearing, Residents were "at a fundamental disadvantage" and Developer was unfairly favored. As an initial matter, the record shows that a member of the Planning Commission suggested that the public should be able to share screens, but Residents do not direct us to any point in the record when a member of the public subsequently requested to present documents and was denied. Even assuming the public was limited in all manners that Residents suggest, we conclude that the Governing Body "made efforts to be fair to all parties." *See W. Bluff Neighborhood Ass'n*, 2002-NMCA-075, ¶ 47. Developer appeared on screen and shared the presentation visually with the Governing Body, which permitted the public to see and later critique the presentation during public testimony. The public did not appear visually on screen and was permitted unlimited written submissions. While not identical opportunities, we cannot say that the process was unfair or prejudicial. The

22

Governing Body did not, solely by permitting Developer to appear on screen and limiting the public's ability to appear visually, violate Residents' due process rights. *See id*.

**B.**     **The Proceeding Afforded Constitutionally Sufficient Due Process as a Whole**

{31}     Having declined to hold that any one procedure by itself establishes a due process violation, we consider the proceedings as a whole. Residents contend that "[t]he totality of the Governing Body's unreasonable limitations on [Residents] created a hearing process that was fundamentally unfair." The City, in response, makes two broad arguments. First, the City maintains that Residents received sufficient process during the two-day, more than eleven-hour hearing, in addition to the Planning Commission proceedings. Second, the City contends that Residents were not prejudiced by the asserted procedural errors, because Residents have identified no testimony or evidence that the limitations on public participation foreclosed. We agree with the City that over the course of the entire proceeding, including the Planning Commission hearings, Residents had a meaningful opportunity to be heard and that as a result, the procedures used by the Governing Body in these circumstances did not create a risk of erroneous deprivation of Respondents' rights. *See Skowronski*, 2013-NMCA-034, ¶ 40 (concluding that the procedures used did not create a risk of erroneous deprivation of rights).

23

{32} Before setting forth the circumstances, we address Residents' assertion that our review should not consider the public's opportunity to participate in the Planning Commission proceedings. Residents maintain that because we conduct a de novo review and not a "whole record review," the record should be limited to only the Governing Body's hearing procedures. In our de novo review, however, we are obligated to review the entire record of proceedings. *See Morris v. Brandenburg*, 2015-NMCA-100, ¶ 26, 356 P.3d 564 (reviewing "the claimed constitutional interest in the context in which the allegedly protected conduct [took] place"). The Governing Body had before it the minutes from the Planning Commission's meetings, notes, reports from City Staff, and the written comments from the public, all of which we therefore consider to be part of the Governing Body's hearing procedures that Residents argue were insufficient. Considering all of the opportunities to be heard that were afforded to Residents in the Planning Commission through the public hearings before the Governing Body, we cannot agree with Residents that the process was insufficient.

{33} The Planning Commission received written public comment from forty-two members of the public and at a two-day hearing heard testimony from forty-six members of the public. Each of the three Residents submitted written comments and two testified before the Planning Commission. In advance of the Governing Body hearing, City Staff submitted a memorandum that summarized the proceedings up

24

to that point, outlined the Planning Commission's analysis, and recommended that the Governing Body approve the applications. As we have noted, the Governing Body received the minutes from the Planning Commission's hearing and the written public comment submitted to the Planning Commission. Before the hearing, the Governing Body also received additional written comment from thirty-nine members of the public.

{34} Residents nevertheless maintain that they were prejudiced because the applications were granted, which impacted their property rights. Residents state that their requested procedures "would have allowed them to better develop their arguments and evidence in a fair proceeding." Residents, however, do not identify information and opinions that they could not express within the time limits, anything they did not have an opportunity to rebut in written or oral form, or documents that they were prevented from sharing electronically. Residents suggest that the decision to review five applications at once required that the associated public hearing afford greater protections and more time to assert their positions. The single hearing, however, provided the public with a comprehensive picture of the proposed project as opposed to a piecemeal proceeding and misleading applications that did not give sufficient notice of the scope of the proposed project. *Cf. Sanchez v. Bd. of Cnty. Comm'rs of Taos*, 2022-NMCA-002, ¶ 39, 503 P.3d 392 (concluding that piecemeal

25

applications were "misleading" and failed to give the objectors sufficient notice of the scope of the entire project).

{35} "In administrative proceedings due process is flexible in nature and may adhere to such requisite procedural protections as the particular situation demands." *Battershell*, 1989-NMCA-045, ¶ 17. Residents had multiple opportunities to testify, the ability to submit unlimited written comment, and advance knowledge about the points of Developer's presentation. In the public hearing before the Governing Body, Residents, as well as other members of the public, expressed frustration with Developer's plans and responses to the public, the process employed by the City, and the limitations on public participation. Throughout the proceedings, schisms within the community became apparent, and Residents did not feel heard by the City or Developer. The question before us, however, is the constitutionality of the process afforded to Residents by the Governing Body. Residents have specified neither to the district court nor this Court how the procedures they have requested would have further safeguarded their rights nor demonstrated that the processes employed by the Governing Body created a risk of erroneous deprivation of their rights. We therefore conclude that no due process violation occurred.

**CONCLUSION**

{36} We affirm the district court and deny the City's motion for rehearing.

{37}    **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**SHAMMARA H. HENDERSON, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation**